401 So.2d 477 (1981)
Doris M. CUSHMAN, et vir., Plaintiff-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANY, et al., Defendant-Appellant.
No. 14549.
Court of Appeal of Louisiana, Second Circuit.
June 8, 1981.
*478 McKeithen & Burns by Don C. Burns, Columbia, for plaintiff-appellee.
Davenport, Files, Kelly & Marsh by William G. Kelly, Jr., Monroe, for defendant-appellant United Services Auto. Assoc.
Theus, Grisham, Davis & Leigh by J. Bachman Lee, Monroe, for Fireman's Fund Ins. Co., McNair and Williams.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
Defendant, United Services Automobile Association, appeals a judgment against it as the underinsured motorist insurer of plaintiffs Doris M. Cushman and Joe Cushman, for damages sustained by plaintiff due to serious personal injuries suffered by Doris M. Cushman in an automobile-truck collision which occurred on August 12, 1978 in the town of Columbia, Louisiana. The trial court found the accident was caused solely by the negligence of John L. Williams, who was driving a truck owned by D. W. McNair, in the course and scope of his employment for McNair. The truck was insured by Fireman's Fund Insurance Company which provided Williams and McNair with $100,000 liability coverage for the damages sustained as result of Doris Cushman's injuries as the driver of the automobile which collided with the truck. The appellant, as the underinsured motorist carrier on the Cushman vehicle, provided liability coverage for the damages sustained by plaintiffs in the amount of $300,000.
The judgment appealed awarded Doris Cushman general damages for her personal injuries in the amount of $125,000 against the two insurers, Williams, and McNair. The judgment awarded Doris Cushman for loss of income the sum of $100,000 against the two insurers. The judgment awarded to Doris and Joe Cushman the sum of $50,000 for future services of a house maid; the sum of $10,843 for past medical expenses; the sum of $10,000 for future medical expenses. These awards were against the two insurers. The insurers were cast for all *479 costs including expert witness fees for the doctors who testified for plaintiff. The judgment limited Fireman's Fund's liability to $100,000 which was the amount of the coverage. Because Williams and McNair had little means with which to respond in judgment, the appellant was awarded a judgment for only $500 against each of them on its third party demand.
Only U.S.A.A., the underinsured motorist carrier, appealed. Plaintiffs answered the appeal.
Quantum is the only issue on appeal. U.S.A.A. does not assign as error the pain and suffering award in favor of Doris Cushman in the amount of $125,000.
U.S.A.A. asserts the following errors in the judgment against it: (1) the trial court's action assessing as cost an expert witness fee in the amount of $150 for Dr. William J. Erwin, a psychiatrist, who did not testify at trial, and whose testimony was not taken by deposition, (2) the award to plaintiffs for past medical services in the amount of $10,663 which were supplied by the Veterans Administration and subrogated to it by the provisions of 42 U.S.C.A. § 2651, et seq, (3) the award of $10,000 for future medical expenses, (4) the award of $100,000 for loss of income, and (5) the award of $50,000 for future maid service.

EXPERT WITNESS FEE
The four-page detailed medical report of Dr. Erwin containing his psychiatric evaluation of Doris Cushman following his examination of her on September 12, 1979, was placed in evidence by stipulation of the litigants in lieu of his testimony.
Appellant contends that because Dr. Erwin neither testified at trial, nor was his testimony taken by deposition, that the trial court should not have fixed an expert witness fee for Dr. Erwin in the amount of $150 and assessed it as cost.
LSA-R.S. 13:3666 which authorizes the court to fix expert witness fees and assess them as cost was amended by Act No. 618 of the 1980 Legislature to authorize the court to include as cost the reasonable and necessary cost for medical reports. The amendment reads as follows:
"LSA-R.S. 13:3666: ....
. . . .
(C) In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records."
Considering the specific authority for including the cost of medical reports within the cost assessed against the party cast, and the broad discretion which the trial judge is given in making the determination of the amount of said cost, we find no error in the expert witness award fixed by the court for Dr. Erwin's report. See Hebert v. Diamond M Co., 385 So.2d 410 (La.App. 1st Cir. 1980), and Williams v. Harvey, 328 So.2d 901 (La. App. 4th Cir. 1976).

AWARD FOR PAST MEDICAL EXPENSES
The trial court award of incurred medical expenses included $10,663 for medical services supplied to Doris Cushman, who was a retired Air Force nurse, by the Veterans Administration. The claim for the value of these services is subrogated by statute to the United States. 42 U.S.C.A. § 2651 provides in pertinent part:
"(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, *480 personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished...."
Plaintiffs recognized in their petition that the claim for the V.A.'s supplied medical services was subrogated to the United States in Paragraph XV of their petition wherein they alleged:
"The plaintiff for the sole use and benefit of the United States of America, under the provisions of Title 42, United States Code, Sections 2651-2653, and with the express consent of the United States of America, assert a claim for the reasonable value of said past and future care and treatment."
Defendants in their answers denied the factual allegations of Paragraph XV of plaintiffs' petition and plaintiffs offered no evidence at trial to establish they were authorized to assert the claim of the United States of America for the value of the medical services which was supplied Doris Cushman by the Veterans Administration, though exhibits tending to establish the value of these services were placed into evidence by stipulation of the parties.
Plaintiffs here contend that under the provisions of LSA-R.S. 46:12 they were not required to establish the allegations quoted from Paragraph XV of their petition in order to recover the award for the medical services rendered by the V.A. This statute provides:
"Whenever the pleadings filed on behalf of any charity hospital of this state or any veterans administration hospital in the state are accompanied by an affidavit of the director or any officer of the hospital or of the attorney designated to represent the hospital, that the facts as alleged are true to the best of the affiant's knowledge or belief, all of the facts alleged in the pleadings shall be accepted as prima facie true and as constituting a prima facie case, and the burden of proof to establish anything to the contrary shall rest wholly on the opposing party."
Plaintiffs' contention is clearly without merit because the affidavit required by LSA-R.S. 46:12 is not attached to this petition or otherwise contained in the record. The judgment in favor of plaintiffs for medical services rendered by the V.A. must be set aside because plaintiffs here could not recover for value of the services rendered by the V.A. Smith v. Foucha, 172 So.2d 318 (La.App. 4th Cir. 1965); Avery v. Scott, 216 So.2d 111 (La.App.2d Cir. 1968); Maddux v. Cox, 382 F.2d 119 (8th Cir. 1967).

AWARD FOR FUTURE MEDICAL EXPENSES
Included among Doris Cushman's severe injuries were the following: (1) severe brain concussion, (2) closed head injury with facial fractures, (3) fracture of left hip requiring fixation by use of a metal plate and screws which injury caused the left leg to be shorter than the right, and (4) serious fracture of right wrist requiring open reduction, together with serious soft tissue injuries in the wrist area.
Dr. Kingsley, an orthopedic surgeon who examined plaintiff for appellant, testified with reference to the metal used in the repair of Doris's hip fracture that:
". . as the muscles rub over the big heavy plate and screws there's always some deep-seated aching."
He stated that plaintiff may need these pieces of metal removed from her hip at a future time because of the pain.
Dr. Rambach, an orthopedic surgeon who testified for plaintiff, stated the metal plate and screws are normally never removed when placed in hip fractures because they are more commonly used in hip fractures of people much older than Doris, who was 56 years old when she had the accident, and had a life expectancy of about 20 years. Dr. Rambach testified that as plaintiff became older the screws holding the plate could become loose, and for this reason the plate and screws would have to be removed. He considered it more probable that this hardware could have to be removed from Doris's hip at some time in the future because she was not older when the metal had to be placed in her hip.
*481 Dr. Rambach also testified plaintiff's deformed and painful right hand and wrist, which has severe limitation of motion, weakness of grip, and in which arthritis will set up, may require future surgery.
Doris complains that she has poor memory and difficulty in arranging her thoughts and is slow in thinking. She suffers from headaches and dizzy spells. Dr. Rambach testified these problems which Doris has are the result of her serious head injuries.
Appellant generally complains of a lack of evidence to support the future medical award, and more particularly complains that it is error to award almost as much for the future medical expense as was awarded for the medical services received up to trial date.
The record does not establish that future orthopedic surgery will be performed on plaintiff's left hip or right wrist, but the testimony concerning the residual disability and pain contained at these fracture sites is sufficient to establish that it is more probable than not that during the plaintiff's life expectancy of about 20 years she will have some substantial medical expense related to these injuries and may very well have orthopedic surgery in both areas of residual disability. The residual symptoms that Doris has due to her head injury may also require medical treatment during her future years.
Plaintiffs have a right to recover for the cost of future medical treatments and these damages should not be denied because it is impossible to establish the nature and extent of the treatment that will be required and the exact cost of it.
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), our supreme court recognized a plaintiff's right to recover medical expenses though the extent and cost of them could not be established with certainty. The court there said:
"In our opinion, this evidence proves that, more probably than not, the plaintiff Jordan will have to be placed in a nursing home from time to time due to his tort-caused mental condition. On the other hand, the evidence does not preponderantly show that this is necessary other than intermittently. Since there is a legal right to recovery, although the damages cannot be exactly calculated, an award of seven thousand five hundred dollars for this loss is appropriate under the circumstances, including the plaintiff's twelve-year further life expectancy." Id. at 157.
Appellant contends the award of $10,000 for future medical is excessive for the reason that the amount is not much less than the value of the medical services which Doris had received for treatment of her serious injuries as of trial date. Considering continuous substantial increases in the cost of medical services which has played such a substantial part in our present double-digit inflation, we find no abuse in the trial judge's much discretion in determining the award for the cost of medical services which plaintiffs will require at some time in the future.
Appellant also argues that because plaintiff received her past medical services from the V.A. that she will also receive her future medical services from the V.A. without being required to pay for them. This argument is totally without merit for the reason that plaintiff may prefer or be required by virtue of her personal circumstance to obtain her future medical services from a source other than the V.A. The appellant as the insurer of the tortfeasor who brought about the need for the medical treatment has no right to dictate the manner in which plaintiff obtains medical treatment which she may require in the future.
Plaintiffs in their answer to this appeal seek an increase in the award for future medical. As we have pointed out, the exact nature of the future medical services that may be required nor has their cost been established, we conclude that the trial court did not abuse its much discretion in fixing the future medical award at $10,000.

WAS THE $50,000 AWARD FOR FUTURE MAID SERVICE SUPPORTED BY THE EVIDENCE?
Appellant contends that the award for future maid service is error because *482 there is no evidence that plaintiff needs a maid, nor that she has one, nor does the evidence support the amount of the award.
Doris testified she is unable to sweep, mop, scrub clean unusually dirty dishes, make up beds, handle hot liquids, or any heavy object with her right hand. She is only able to dust and perform the very lightest of household chores. The medical evidence supports Doris's testimony because it establishes that because of the severe bone and soft tissue injuries to her right wrist she has severe limitation of motion in her right wrist and hand, clumsy fingers, weakness of grip, is developing arthritis and has residual pain in the right wrist, along with substantial atrophy of the right forearm.
Joe Cushman testified that because of his wife's inability to do the heavy housework he employs a maid for three days each week to do this work, for which services he pays her $30 per day, or $90 per week.
Dr. Bettinger, who is the Director of the center of Business and Economic Research at Northeast Louisiana University, and who is an expert in the field of statistics and economics, testified the cost of providing a maid for Doris three days a week for her life expectancy of 21.6 years would be $90,694. The reasoning of the expert is as follows:
"Okay. Again, using past changes in the minimum wage rate and which will continue into the 1980's, I've used a seven and a half percent increase in the minimum wage rate as I did in the earlier example. Also, a six percent discount rate, and projected it for the rest of her real life, assuming that she would need maid services for that period. That economic loss, just due to the extra cost necessary to maintain those services amounted to $90,694.00."
We find the award for future maid service is supported by substantial evidence in the record and find no abuse of the trial judge's much discretion in his determination of the amount of the award.
Plaintiffs in their answer to the appeal seek an increase in the award for future maid service to the amount of $90,694, which the expert testified would be required to maintain those services. The expert's calculations are necessarily based upon assumptions based upon averages determined from statistics and while the results of his studies may be the most reliable information available as to the cost of Doris's future maid service need, these conclusions are far from certainties. The conclusions could be erroneous because economic conditions may change or because plaintiff may not live the time estimated by the expert in reaching his conclusion. The plaintiff's health could substantially improve as some of the physicians who testified considered possible, thereby eliminating Doris's need for as much maid service as was covered by the expert's calculations. The trial judge did not abuse his discretion when he set the value of the future maid service at $50,000.

WAS THE $100,000 AWARD FOR LOSS OF INCOME EXCESSIVE?
Appellant contends the loss of income award should be reduced to a maximum of $50,000 because the evidence does not establish that Doris would continue to work until she was 65, and for the further reason that the evidence does not establish she is unable to work as a nurse in a supervisory capacity.
The evidence establishes that Doris, a former Air Force Nurse who had received a medical discharge at the rank of Captain, moved with her husband, Joe, to the small town of Kelly in Caldwell Parish in 1974. Since 1974 Doris had been regularly employed as a nurse in small hospitals and nursing homes in Caldwell, LaSalle, Franklin, Winn, and Richland Parish until May, 1978 when she was required to resign her job as Director of Nursing at Rayville Guest Home to assist her husband who had broken his leg.
The serious residual disability which Doris has in her right wrist which prevents its use for doing household chores, also causes her to be unable to lift patients, handle *483 medicine bottles, use her fingers in the skillful manner required of nurses and write the necessary records nurses are required to maintain. Doris's testimony and the medical evidence further establishes that she has pain in her left leg and is not able to stand on it for long periods of time which adds to her inability to function as a nurse. Doris testified that she has difficulty functioning mentally:
"I can't organize my thoughts and it takes me too long to say what I am going to say and then I forget what I started to say."
The medical evidence establishes that these problems were caused by the serious brain concussion and other head injuries suffered by Doris in the accident.
The last job Doris had before her accident as Director of Nursing at the Rayville Guest House was one that placed upon her full responsibility for the welfare of 93 patients. She was the only Registered Nurse employed at the facility. There is evidence that nursing homes have frequent emergency situations. She would necessarily be required to perform on her feet and with her hands and mind all the duties of an alert R.N. to properly function in this position. Her former employer testified that though Doris possessed outstanding qualifications for the job before her accident, she would not now employ Doris for the position because of her residual disability.
Appellant's contention that Doris is now able to work as a R.N. is not supported by the evidence, nor is there any real reason to believe she could function as a supervisor of nursing in a large institution in light of her inability to write and to organize her thoughts.
Appellant's contention that Doris would not have continued to work until age 65 is not supported by any valid inferences from the record which clearly establishes she had been regularly employed for 4 years before the accident, with the exception of the period just before the accident when she was required to stop work to assist her husband who had broken his leg. She testified that except for her injuries she would have returned to work.
While we find the record establishes Doris would have returned to work, we recognize the loss of the ability to work in itself creates a loss compensable in damages, whether or not she ever intended to return to work. Folse v. Fakouri, 371 So.2d 1120 (La.1979). The trial judge did not abuse his much discretion in fixing the loss of income award.
For the reasons assigned we reduce the award for past medical expense by the amount of $10,663 which was the value of the past medical service supplied by the V.A. and recast the 6th paragraph of the judgment to read as follows to reflect this reduction:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs, Doris M. Cushman and Joe Cushman, and against the defendants, Fireman's Fund Insurance Company and United Services Automobile Association, for medical expenses for the full and true sum of One Hundred Eighty and no/100 Dollars ($180.00).
As AMENDED the judgment is AFFIRMED at appellant's cost.